**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>MICHAEL JAMES DELEO,<br><br>　　　　　Debtor | Chapter 11<br><br>Case No. 21-20025 |

**CREDITOR ANTHONY VEGNANI'S OBJECTION TO DEBTOR MICHAEL JAMES DELEO'S ELIGIBILITY TO PROCEED AS A DEBTOR UNDER SUBCHAPTER V OF THE UNITED STATES BANKRUPTCY CODE PURSUANT TO 11 U.S.C. § 1182(1)**

Pursuant to Rule 1020(b) of the Interim Rules of Bankruptcy Procedure, Creditor Anthony J. Vegnani objects to Debtor Michael J. Deleo's (the "**Debtor**") eligibility to proceed as a Subchapter V debtor under 11 U.S.C. § 1182 because he is not engaged in commercial or business activities and because at least fifty percent of his debt did not arise from such activities. In support of this objection, Anthony Vegnani states as follows:

### Introduction

1. This case presents the question of what debtors should qualify for the benefits of Subchapter V. The Debtor works for a company that he does not own. He used to own an active business, but that business shut down years ago. Since 2017, his only income has been from working for others. His scheduled debts fail to meet the debt thresholds created by statute. Because he is not a debtor who is "engaged in commercial or business activities," and because he does not meet the debt thresholds, his election of Subchapter V should be rejected.

### Authority, Jurisdiction, Venue, and Timeliness

2. This Court has authority to issue final orders and judgments in this contested matter, it has jurisdiction pursuant to 28 U.S.C. § 1334(b), this is a statutorily-core proceeding

    under 28 U.S.C. § 157(b)(2)(A) and (O), and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This objection to eligibility is timely as it has been filed within thirty days of the completion of the meeting of creditors. Interim Fed. R. Bankr. P. 1020(b).

## The SBRA

4. The Small Business Reorganization Act of 2019 (the "**SBRA**") was enacted to "address reorganization of **small businesses**" by creating a new Subchapter V within the existing framework of Chapter 11 of the Bankruptcy Code. 116 Pub. L. 54, 1133 Stat. 1079 (Aug. 23, 2019) (emphasis added).

5. Subchapter V creates significant benefits for debtors who qualify. It carries many of the benefits of Chapter 11 without many of the costs. A debtor can spread payments over 3 to 5 years and pay administrative expenses over the life of the plan. There are no U.S. Trustee fees. There is less risk that a creditors' committee will be formed. Equity holders in a business can potentially retain their ownership interest without providing new value. Only the debtor can file a plan, the plan process is streamlined, and it can be approved without acceptance by creditors. It allows debtors to preserve assets that would otherwise be liquidated, including a residential property where a debtor is potentially able to bifurcate and cram down secured debt.

6. Because Subchapter V carries significant benefits in comparison to other chapters of Title 11, Congress limited access to Subchapter V to a debtor who is "a person engaged in commercial or business activities" and for whom at least half of their debt comes from "the" commercial and business activities of the debtor. 11 U.S.C. § 1182(1)(A).[1]

---

[1] There are also caps on how much debt a debtor may have to qualify for Subchapter V. *Id.*

2

**The Debtor is Not Engaged in Commercial or Business Activities**

7. As of the Petition Date, the Debtor was employed as a consultant for a company called Talem Health. [Dkt. No. 24 at 19.]

8. At the meeting of creditors (the "**341 Meeting**"), the Debtor confirmed that he was not "doing anything else for work or other business activities as of the date of the Petition" other than working for Talem Health.

9. The Debtor has been working for other entities since at least September 2017, when he entered into the first of several employment agreements with a company called Medlogix.

10. His schedules reveal that the Debtor's sole source of income is from working for others.

11. The Debtor disclosed income of $5,500 in the time period from January 1, 2021 to the Petition Date, $40,733 in 2020, and $95,600 in 2019 in "wages, commissions, bonuses, tips". [Dkt. No. 24-1 at 1.] He conceded that he received no income from "operating a business" during 2019, 2020, and 2021. *Id.*; *see also* [Dkt. No. 25 at 1] (conceding no receipt of income from "operating a business, profession or farm" in the six months before the Petition Date).

12. Accordingly, for years, the Debtor has been solely in the employ of others. This does not constitute being "engaged in commercial or business activities."

13. The Debtor might claim that he qualifies for Subchapter V because some of his debts are attributable to his ownership of Mass Medical Services ("**MMS**").

14. MMS no longer operates and has not operated for years.

15. MMS has not filed for bankruptcy.

16. The Debtor has described MMS as being "insolvent." [Dkt. No. 24 at 6.]

17. The Debtor is no longer employed by MMS. *Complaint*, *Deleo v. Vegnani*, Case No. 21-2005, Dkt. No. 1 ¶ 12; *Debtor's Application for Authority to Employ and Retain Marcus | Clegg as Counsel*, Dkt. No. 27 at ¶ 14.

18. At the 341 Meeting, the Debtor was asked: "[I]s Mass Medical doing any business at all at this juncture?" In response, the Debtor testified that "**it is really not doing any business**, but I have maintained it over the years just by doing the annual filings . . . and paying whatever taxes were associated with that, or any filing piece that were associated with it just to keep the company alive and in good standing with the State. . . . But other than that, very – there was old – some old debts that were paid to the company, so there had to be an account, so that might have been put in. **But there's not active business being done by that business at all.**"

19. This is consistent with statements made by the Debtor and documents produced in other litigation.

20. At trial on April 20, 2018 during litigation between the Debtor and Mr. Vegnani, the Debtor testified that "MMS doesn't have any assets," "MMS doesn't have any money," "The current state of MMS is that its – the company is no longer doing services."

21. An agreement between the Debtor and Medlogix dated September 14, 2017 included a provision that "no new business will trade under the name Mass Medical Services, Inc., or a variant thereof." Under the same agreement, the Debtor agreed that he would not "own, manage, engage, operate, join, control, or participate in any business" in competition with Medlogix. A subsequent agreement dated January 18, 2018 confirmed that this prohibition on operating another business included a prohibition on operating MMS.

22. During a deposition in 2018, the Debtor testified that "there was no business happening" for MMS.

23. There is litigation currently pending in the District of Massachusetts between Mr. Vegnani and Medlogix in which Mr. Vegnani is asking that court to recognize a de facto merger between Medlogix and MMS.  *Vegnani v. Medlogix, LLC*, Civil No. 19-11291-LTS (D. Mass.).  That court has already denied Medlogix's motion to dismiss and recently denied Medlogix's motion for summary judgment.  In its recent order, that court noted that "MMS was required to, and did, cease all operations under the terms of Deleo's agreements with Medlogix" and that the Debtor was required to ensure that "no new business" would operate under Mass Medical Services' name.

### The Debtor's Lack of Contemporary Engagement in Commercial or Business Activities Makes Him Ineligible for Subchapter V

24. To be eligible to proceed under Subchapter V, the Debtor must demonstrate that he is "a person engaged in commercial or business activities."  11 U.S.C. § 1182(1)(A).  He carries the burden of establishing this fact.  *In re Johnson*, 2021 WL 825156, at *4 (Bankr. N.D. Tex. Mar. 1, 2021) (assessing a debtor's eligibility for Subchapter V); *Montgomery v. Ryan*, 37 F.3d 413, 415 (8th Cir. 1994) (holding that party filing petition bears burden of proving eligibility); *See Cath. Sch. Emps. Pension Tr. v. Abreu*, 599 B.R. 634, 653 (B.A.P. 1st Cir. 2019) ("debtors generally bear the burden of establishing that they are eligible for relief under § 109").

25. The Debtor cannot meet his burden here because MMS (the "commercial or business activities" from which his business debt arises) has been out of business for years.

26. Accordingly, the Debtor is not "engaged in" commercial or business activities.  "The plain meaning of 'engaged in' means to be actively and currently involved.  In § 1182(1)(A) of the Bankruptcy Code, 'engaged in' is written not in the past or future but

5

in the present tense." *In re Thurmon*, 2020 WL 7249555, at *4 (Bankr. W.D. Mo. Dec. 8, 2020); *see also In re Johnson*, 2021 WL 825156, at *6 (Bankr. N.D. Tex. Mar. 1, 2021) ("[A]pplying the ordinary meaning of "engaged" to the language of section 101(51D), a person "engaged in" commercial or business activities is a person occupied with or busy in commercial or business activities - not a person who at some point in the past had such involvement.").[2]

27. The SBRA's legislative history reinforces this point. The need for the legislation was described as "allow[ing] these [small business] debtors to file bankruptcy in a timely, cost-effective manner, and hopefully allows them to remain in business which not only benefits the owners, but employees, suppliers, customers, and others who rely on that business." H.R. Rep. No. 116-171 at 4 (2019).

28. In implementing the SBRA, Congress was not trying to help businesses that were no longer operating. Instead, Congress was providing a pathway to ensure that businesses *continued* operating.

29. Here, there is no "small business" to reorganize and continue operating. MMS is defunct and there is no prospect or proposal for it to "remain in business." There are no employees, suppliers, customers, or any others who rely on the business of MMS.

30. Because MMS is not currently active, the Debtor cannot be "engaged in" commercial and business activities.

31. The Debtor may argue that this Court should follow the lead of a South Carolina bankruptcy court and conclude that the existence of old business debt is sufficient to allow him to qualify as a small business debtor. *See In re Wright*, 2020 WL 2193240

---

[2] When a statute does not define a term, courts "begin by analyzing the statutory language, assuming that the ordinary meaning of that language accurately expresses the legislative purpose." *Smith v. Maine Bureau of Revenue Services,* 590 B.R. 1, 10 (D. Me. 2018), aff'd sub nom. *In re Smith,* 910 F.3d 576 (1st Cir. 2018).

(Bankr. D.S.C. Apr. 27, 2020); *see also In re Bonert*, 619 B.R. 248 (Bankr. C.D. Cal. 2020); *In re Blanchard*, No. 19-12440, 2020 WL 4032411 (Bankr. E.D. La. July 16, 2020). These decisions are not persuasive.

32. In *Wright*, the court concluded that the statute did not limit its application to debtors "currently" engaged in business or commercial activities. *Id.*, 2020 WL 2193240, at *3. The courts in *Bonert* and *Blanchard* follow this reasoning without significant elaboration. *In re Bonert*, 619 B.R. 248 (Bankr. C.D. Cal. 2020); *In re Blanchard*, No. 19-12440, 2020 WL 4032411 (Bankr. E.D. La. July 16, 2020).

33. This reasoning ignores the language of the statute and broadens the application of Subchapter V beyond that intended by Congress. If Congress had intended the statute to apply to residual business debt from a long-defunct business, it would have crafted the statute differently. Instead of using the present-tense phrase "engaged in" to characterize "commercial or business activities," Congress would have written "engaged in *or has been engaged in*."

34. This interpretation is consistent with the context in which the language is used. The benefits of Subchapter V are designed to "facilitate expediency and minimize cost" of a business reorganization. *In re Johnson*, 2021 WL 825156, at *6. "Such benefits are essential to the ability of a small business that is currently occupied with/busy in commercial or business activities to successfully reorganize as a going concern. They are not essential to a small business that is no longer occupied with/busy in any commercial or business activities." *Id.*

35. As the *Johnson* court also pointed out, the phrase "engaged in" is used in other portions of Chapter 11 and Chapter 12 of the Bankruptcy Code and has been interpreted by the courts as contemplating a contemporary, not retrospective, state of affairs. *See In re*

7

*Johnson*, 2021 WL 825156, at *7 (citing cases); *In re Thurmon*, 2020 WL 7249555, at *3-4 (citing cases).  When drafting the SBRA, Congress had the benefit of these interpretative decisions.  Congress's choice to continue to use the phrase "engaged in" permits this Court to draw the inference that it should be interpreted in the same, contemporary, manner.

36. Finally, accepting the reasoning of the *Wright* court is to render the phrase "engaged in commercial or business activities" superfluous.  Consider Section 1182(1)(A) without that phrase.  The remaining language would permit any potential debtor with residual business debt (debts "which arose from the commercial or business activities of the debtor") to qualify for Subchapter V relief.  If Congress had intended Subchapter V relief to be available to debtors with such residual business debt, Congress would not have included the phrase "engaged in commercial or business activities."  "It is [a court's] duty to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 175 (2001) (quotation marks excluded).  Here, the addition of that key "engaged in" phrase must mean something more than that the Debtor was engaged in such practices in the past.

**The Debtor Fails to Meet the Debt Requirements for Subchapter V Eligibility**

37. Even if the Debtor had met the requirement of being "engaged in commercial or business activities," his scheduled debt fails to meet the qualifications for eligibility under Subchapter V.

38. In order to qualify for Subchapter V, a debtor must have "aggregate **noncontingent liquidated** secured and unsecured debts as of the date of the filing of the petition . . . in an amount not more than $7,500,000 . . . **not less than 50 percent of which** arose from

8

the commercial or business activities of the debtor." 11 U.S.C. § 1182(1)(A) (emphasis added).

39. The Debtor scheduled a total of $1,869.841.46 of debt on his schedules. [Dkt. No. 24 at 1.]

40. Fifty percent of that amount is $934,920.73.

41. Of the scheduled debts, <u>none</u> are declared to be liquidated. [Dkt. No. 24 at 9-15.] Accordingly, pursuant to the Debtor's own statements under oath, he does not owe at least $934,920.73 in "liquidated" debts and is not eligible to be a debtor under Section 1182.

42. Even if the Debtor had declared those debts to be liquidated, he still fails the eligibility test.

43. Of his debts, $564,000 is attributable to the debt owed on the Debtor's jointly owned residence and $598,000 is owed on student loans. These debts are personal in nature and did not arise from the Debtor's commercial or business activities.

44. The Debtor lists the debt to Mr. Vegnani (in the amount of $464,952) as "disputed" and "subject to offset." Accordingly, that debt cannot qualify as a "noncontingent liquidated" debt that would count towards the fifty percent threshold.

45. The Debtor lists the debt to the Small Business Administration (in the amount of $80,900) as "contingent." That debt also cannot count towards the threshold.

46. That leaves a mere $161,989.46, or 8.66% of the total, in debt that might plausibly be counted as "noncontingent" debt arising from commercial or business activities.[3]

47. Because the Debtor's scheduled debts fail to meet the threshold criteria for eligibility for Section 1182, he does not qualify as a debtor under Subchapter V.

---

[3] The Debtor must still prove this fact, of course; Mr. Vegnani does not concede that these remaining debts did so arise.

9

**Conclusion**

48. Subchapter V is intended to help small businesses gain the reorganization benefits of Chapter 11 at a lower cost and shorter time frame.  The Debtor is not a small business.  He does not have any employees.  He does not own an interest in an operating business.  He does not sell goods or services.  At least half of his debts did not arise out of his commercial or business activities.  He does not and should not qualify for Subchapter V relief.

WHEREFORE, Party-in-Interest Anthony Vegnani respectfully requests that this Court determine that the Debtor does not qualify as a debtor under Section 1182(1)(A).

Dated:  April 9, 2021

/s/ Kelly W. McDonald
Kelly McDonald, Esq.
kmcdonald@mpmlaw.com
MURRAY PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME  04104-5085
(207)773-5651
(207) 773-8023 (Fax)
*Attorney for Anthony Vegnani*